NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDUL DAVIS, <br><br> *Plaintiff*, <br><br> v. <br><br> DENNIS BURKE, et al., <br><br> *Defendants*. | Civil Action No. 19-10620 <br><br> **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

*Pro se* Plaintiff Abdul Davis alleges that multiple law enforcement members violated his civil rights while executing an arrest warrant at Plaintiff's apartment. Presently before the Court is a motion to dismiss filed by some of the law enforcement Defendants.[1] D.E. 35. Plaintiff filed an opposition, D.E. 40, 41, to which the Moving Defendants replied, D.E. 42. The Court reviewed the submissions[2] made in support and in opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, the motion to dismiss is **DENIED.**

---

[1] The Moving Defendants are Union County Sheriff's Officers Dennis Burke, Carlo Caparruva, Lt. Guerrant, Manuel Cruz, James Miller, Kenneth Randazza, and Ryan Hanrahan. The Union County Sherriff's Department is also party to the motion but as discussed below, Plaintiff does not appear to assert claims against the Sheriff's Department.

[2] The Moving Defendants' brief in support of their motion (D.E. 35-1) is referred to as "Defs. Br." and their reply brief (D.E. 42) is referred to as "Defs. Reply". Plaintiff's opposition papers are filed as two different docket entries (D.E. 40, 41). As a result, the Court refers to Plaintiff's opposition by docket entry.

I.      FACTUAL[3] AND PROCEDURAL BACKGROUND

On April 20, 2016, Plaintiff was indicted by a grand jury in New York County.  TAC ¶ 10. That same day, the Clerk of the New York County Supreme Court issued a warrant for Plaintiff's arrest.  *Id.* ¶ 11.  The next day, seven Union County Sheriff's Officers (the Moving Defendants) and two New York City Police Officers[4] went to Plaintiff's residence in Linden, New Jersey.  *Id.* ¶ 13.  Defendant Burke (the lone sheriff's officer) rang the doorbell.  Plaintiff walked downstairs from his second-floor apartment and asked, "Who is it?"  *Id.* ¶ 15.  Burke answered, "Sheriff's Office." *Id.* Plaintiff opened the door and was immediately handcuffed. *Id.* Burke "moved past" Plaintiff and met Plaintiff's girlfriend, Shelita Funderberk, on a staircase leading up to Plaintiff's apartment.  Burke asked Funderberk "[i]s anyone else up-stairs in your apartment?" and she stated that two friends were upstairs.  *Id.* ¶ 17.  As an unnamed Defendant handcuffed Funderberk, Burke went upstairs and walked into the apartment.  *Id.*  The two friends in the apartment were also arrested and taken into custody. *Id.* ¶ 17.

After everyone was removed from the apartment and standing on the front porch, Burke approached Funderberk and requested permission to search the apartment.  Burke gave Funderberk a permission to search form and explained the form in its entirety.  Burke also told Funderberk that she could refuse consent at any time but if she did, she would be arrested.  *Id.* ¶ 18.  As Burke explained the consequences of her refusal, the other Defendants "aggressively" stood around Funderberk.  Some of these Defendants took out their handcuffs and nightsticks.  *Id.* ¶ 19.  In

---

[3] The factual background is taken from the Third Amended Complaint ("TAC"). D.E. 12. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[4] Defendants Christopher Shaughnessy and Ivelisse Rodriguez, the two New York City Police Officer Defendants, have not been served.

addition, as Burke was speaking to Funderberk, Malik Rainey, one of the friends who was in the apartment, yelled that Funderberk did not live in the apartment. *Id.* ¶ 20. Plaintiff also alleges that he made it "crystal clear" to Burke that he did not consent to any search of the apartment and that Funderberk should not sign the form. *Id.* ¶ 21. Funderberk signed the consent form. *Id.*

Defendants then searched Plaintiff's apartment and found weapons, among other things. *Id.* ¶ 21. Plaintiff was subsequently taken to the Union County Jail and charged with additional offenses pursuant to New Jersey law. *Id.* ¶¶ 23, 26. Two days later, Plaintiff was indicted for being a felon in possession of a weapon, in violation of N.J. Stat. Ann. § 2C:39-7b.[5] Defs. Br., Ex. B. Plaintiff was extradited to New York in October 2016. *Id.* ¶¶ 23, 27. Plaintiff was ultimately found guilty of numerous offenses by a jury in New York and is presently serving his sentence for those offenses. *See* D.E. 41-3 (New York State Unified Court System case details).

When Plaintiff filed his initial Complaint in this matter, he sought to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. D.E. 3. The Court granted Plaintiff's application to proceed *in forma pauperis* and conducted an initial screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Through the screening, the Court dismissed the complaint without prejudice for failure to state a claim. D.E. 5. The Court provided Plaintiff with leave to file an amended complaint, which Plaintiff filed on November 25, 2019. D.E. 9. The Court also screened the Amended Complaint and determined that Plaintiff could move forward only as to a Section 1983 claim against Defendant Burke. D.E. 10 at 5-6. The Court, however, provided Plaintiff with leave to file another amended pleading. *Id.* at 7-8. Plaintiff subsequently filed the TAC. D.E. 12.

---

[5] A court may consider matters of public record to decide a Rule 12(b)(6) motion. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Judicial proceedings and court documents are matters of public record. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

In the TAC, Plaintiff asserts three claims alleging that Defendants violated his constitutional rights. Plaintiff's claims pertain to Defendants' actions while getting Funderberk's consent to search the apartment. TAC ¶¶ 28-37. The Moving Defendants subsequently filed the instant motion to dismiss, seeking to dismiss the TAC for failure to state a claim.[6] D.E. 35.

Because Plaintiff is proceeding *in forma pauperis* and was only permitted to move forward with his claims against Defendant Burke, the Court is still required to screen the TAC as to the eight other Defendants.[7] As a result, in addition to addressing Defendants' argument for dismissal, the Court also screens the TAC pursuant to Section 1915(e)(2)(B), as to the additional Defendants.

**II.    LEGAL STANDARD**

When allowing a plaintiff to proceed *in forma pauperis*, the Court must review the complaint and dismiss the action if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). When considering dismissal under Section 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted, the Court must apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). The Moving Defendants also seek to dismiss the TAC pursuant to Rule 12(b)(6). *See* Defs. Br. at 8. Accordingly, the Court addresses the motion and screening together.

---

[6] Defendants' motion is a cross-motion to Plaintiff's motion to appoint *pro bono* counsel. D.E. 32. The motion to appoint counsel will be addressed separately.

[7] Because Plaintiff was only allowed to move forward with his claims against Defendant Burke, Plaintiff was just permitted to serve Defendant Burke with the SAC. The Moving Defendants, however, answered the TAC, D.E. 17, and filed the instant motion. Further, the Moving Defendants do not seek to dismiss the TAC for insufficient service of process. As a result, the Moving Defendants have waived their right to challenge service. *See* Fed. R. Civ. P. 12(h)(1).

4

To state a claim that survives a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789. In other words, although a plaintiff need not plead detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

Because Plaintiff is proceeding *pro se*, the Court construes the Complaint liberally and holds it to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

### III.  ANALYSIS

#### 1. Constitutional Violations

Plaintiff alleges that Defendants violated his constitutional rights. Thus, while not explicitly stated, Plaintiff appears to assert claims pursuant to 42 U.S.C. § 1983. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a Section 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

Plaintiff asserts claims against New York City police officers and Union County Sheriff's Department officers. Accordingly, Defendants are state actors for Section 1983 purposes. Moreover, Plaintiff's claims involve Defendants' conduct in searching his apartment. Specifically, Counts One and Two allege that Defendants obtained consent to search through coercion, TAC ¶¶ 28-31, and Count Three alleges that Defendants knew Funderberk could not consent to a search because she did not live in the apartment, *id.* ¶¶ 32-37. "The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). Accordingly, Plaintiff alleges that Defendants violated his Fourth Amendment rights.[8]

---

[8] Plaintiff also alleges that Defendants violated his Fifth and Fourteenth Amendment rights. *See, e.g.*, TAC ¶ 29. The TAC, however, fails to assert facts to support a Fifth or Fourteenth Amendment violation (save the incorporation of the of the Fourth Amendment to state actors by way of the Fourteenth Amendment). Therefore, the Court focuses solely on the Fourth Amendment.

## A. Coerced Consent (Counts One and Two)

Plaintiff alleges that Defendants searched his apartment after Funderberk gave written consent to search but that the consent was obtained through coercion. "Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion." *United States v. Cole*, 437 F.3d 361, 365–66 (3d Cir. 2006). In other words, "[c]onsent is an exception to the requirements of both a warrant and probable cause."[9] *United States v. Murray*, 821 F.3d 386, 391 (3d Cir. 2016) (quoting *Stabile*, 633 F.3d at 230).

Whether a person's consent to search a home is valid and of constitutional force depends upon whether consent was freely given. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "Where there is coercion, there cannot be consent[,]" *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968), and such supposed consent would be "ineffective if extracted by the state under threat of force or under claim of government authority." *Good v. Dauphin Cnty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1093 (3d Cir. 1989). To determine whether a person's consent to search was freely given, courts must ensure that the proffered consent was, in fact, the product of the person's free will and not caused by police coercion. To do so, courts analyze the totality of the circumstances surrounding the interaction in question. *See Bustamonte*, 412 U.S. at 227. This is an objective inquiry, requiring a review of whether the conduct under scrutiny would have impacted a reasonable person's decision to consent. *Id.*

In the January 30 Opinion, the Court concluded that Plaintiff sufficiently pled that Burke obtained consent through coercion by threatening arrest. Jan. 30 Opinion at 5-6. The Court,

---

[9] While Plaintiff alleges that Defendants had an arrest warrant, he does not allege that they obtained a search warrant.

however, determined that in the SAC, Plaintiff did not sufficiently plead that any other Defendant helped Burke obtain the alleged improper consent. *Id.* In the TAC, Plaintiff alleges that as Burke was explaining to Funderberk that she would be arrested if she did not consent to a search, every Defendant physically moved around Funderberk, and some took out their handcuffs and nightsticks. TAC ¶ 19. Plaintiff sufficiently alleges that each Defendant played a part in wrongfully coercing Funderberk to consent to the search. As a result, Plaintiff states a claim against every Defendant in Counts One and Two.

### B. Ability to Consent (Count Three)

Plaintiff also alleges that Defendants knew Funderberk could not consent to a search because she did not live in the apartment. TAC ¶¶ 32-35. Again, voluntary consent is an exception to the warrant requirement, and a third party may provide consent if she has common authority over the premises or effects that are searched. *Stabile*, 633 F.3d at 230. "Common authority rests . . . on [the] 'mutual use of the property by persons generally having joint access or control.'" *Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 170 (1974)). Whether common authority exists is an objective inquiry. *United States v. Al-Salabi*, No. 07-687, 2008 WL 2699429, at *10 (D.N.J. June 27, 2008) (explaining that a court must consider if "the facts available to the officer at the moment warrant a man of reasonable caution in belief that the consenting party had authority over the premises?" (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990))).

In this instance, Plaintiff pleads that as Burke asked Funderberk for consent, Rainey yelled that Funderberk did not live in the apartment and did not have anything there (presumably in the apartment). TAC ¶ 35. Viewing these allegations in a light most favorable to Plaintiff, Plaintiff sufficiently pleads that a reasonable person would not believe that Funderberk had common authority over the apartment. Consequently, Plaintiff also states a claim in Count Three.

8

In sum, Plaintiff plausibly pleads three Section 1983 claims against Defendants[10] and Plaintiff can move forward with this matter pursuant to Section 1915(e)(2)(B). Further, the Moving Defendants' motion is denied, to the extent they seek dismissal for failure to state a claim.

### 2. Qualified Immunity

Next, the Moving Defendants contend that the TAC must be dismissed as to them because of qualified immunity. Defs. Br. at 13-15. Qualified immunity can protect a state actor from liability in a Section 1983 case. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). A court must engage in the following two-part inquiry to determine whether qualified immunity applies: (1) whether the allegations, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (finding defendant police officers were entitled to qualified immunity at the motion to dismiss stage) (citing *Pearson*, 555 U.S. at 232).

---

[10] Although Plaintiff names "all of the Union County Sheriff's Department" and the 33rd Precinct of the New York City Police Department as Defendants in the caption, there are no allegations in the TAC that would support any claims against these entities. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (explaining that a municipality may only be liable for purpose of Section 1983 if the "local government's policy or custom inflicted the injury in question" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978))). As a result, to the extent that Plaintiff intended to assert claims against either entity, they are both dismissed as Defendants in this matter pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

But "[t]he qualified immunity analysis involves a fact-intensive inquiry that is generally ill-suited for resolution at the pleadings stage." *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 121 (D.N.J. 2017) (quoting *Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013)). Therefore, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006). Finally, although a plaintiff must plausibly plead that a constitutional violation occurred, he "has no obligation to plead a violation of a clearly established law." *Id.* at 293. This burden rests with a defendant, even at the motion to dismiss stage. *Id.* at 293-94.

Because the Court already concluded that Plaintiff sufficiently pled that a constitutional violation occurred, the Court turns to the second prong of the qualified immunity defense. A clearly established right is one that is "sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Thus, the second prong of the qualified immunity analysis "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Here, the Moving Defendants do not address whether either of the alleged constitutional violations were clearly established at the time. As discussed, this is a defendant's burden. Consequently, Defendants fail to demonstrate that they are entitled to qualified immunity. *See Rosenberg v. Vangelo*, 93 F. App'x 373, 378-79 (3d Cir. 2004) ("To the extent the Supervisory Defendants fail to address the issue [of whether a right was clearly established], therefore, their claim for qualified immunity fails *ipso facto*.").

### 3. Younger Abstention

Finally, the Moving Defendants argue that Plaintiff's claims must be dismissed under the *Younger* abstention doctrine. Defs. Br. at 12-13. The *Younger* abstention doctrine "creates a separate and independent judicially created abstention doctrine" for federal courts involvement in certain ongoing state court proceedings. *Ivy Club v. Edwards*, 943 F.2d 270, 278 (3d Cir. 1991). As relevant here, the doctrine prohibits "federal intrusion into ongoing state criminal prosecutions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013); *see also Argen v. Kessler*, No. 18-963, 2018 WL 4676046, at *7-8 (D.N.J. Sept. 28, 2018) (stating that *Younger* abstention "requires dismissal of certain federal claims for injunctive or declaratory relief that would interfere with" ongoing state criminal prosecutions).

Although Plaintiff was involved in criminal proceedings in New Jersey and New York, Plaintiff's allegations in this matter only appear related to the New Jersey criminal proceeding.[11] As discussed, Defendants found weapons during their allegedly unconstitutional search of Plaintiff's apartment, and these weapons form the basis for the New Jersey indictment. *See* TAC ¶ 23; Defs. Br., Ex. B. Therefore, only Plaintiff's New Jersey criminal proceeding is relevant to Defendants' *Younger* abstention argument.

Plaintiff is not trying to enjoin the New Jersey criminal proceeding or have this Court otherwise interfere. With respect to the New Jersey criminal charges, Plaintiff indicates that the

---

[11] Plaintiff's opposition largely focuses on whether multiple warrants were appropriate. *See* D.E. 40, 41. The Court acknowledges that these allegations could conceivably impact the New York criminal matter. Plaintiff, however, does not assert claims related to any Defendant's allegedly unconstitutional conduct in obtaining or executing any warrants in the TAC. As discussed, Plaintiff's allegations focus on the warrantless search of his apartment. Accordingly, the Court focuses solely on the allegations that appear in the TAC, not in Plaintiff's opposition. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).

indictment was dismissed in 2017. D.E. 41-6. The Moving Defendants counter that only the warrants issued against Plaintiff were dismissed and that Plaintiff's case remains active. Reply at 2-3. But the Moving Defendants indicate that the matter is presently in "inactive fugitive status," Reply, Ex. A; there has been no movement in the case since Defendant was extradited to New York in 2016, and there are no scheduled hearings or events in the matter, Defs. Opp. Ex. D. Defendants fail to demonstrate that the State has any intention to move forward with the case in New Jersey. In addition, a state proceeding remains "pending" where, among other things, "adequate state-court judicial review of the . . . determination is available to the federal claimants." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 (3d Cir. 1994); *see also FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996) (state proceeding was not ongoing for *Younger* abstention purposes because as a non-party to the state proceeding, the plaintiff could not "secure an adjudication of its constitutional claim" in state court). To the extent that the New Jersey proceedings have not been closed or fully dismissed, it is not clear that Plaintiff could even raise his constitutional challenges in the New Jersey proceeding given the "inactive fugitive status" of his case. Therefore, the Court concludes that there were not any ongoing criminal matters when Plaintiff filed his initial complaint.[12] Without an ongoing state criminal prosecution, the *Younger* abstention doctrine is inapplicable.

---

[12] The Court notes that *Younger* abstention only prohibits a federal court from hearing cases seeking *equitable* relief. *Spring Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (explaining that "courts of equity should not act . . . to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparably injury if denied equitable relief.") (emphasis added). Thus, "[a]bstention is most obviously appropriate in cases where a plaintiff asks a federal court to enjoin some state judicial or quasi-judicial proceeding." *Kaul v. Christie*, 372 F. Supp. 3d 206, 234 (D.N.J. 2019). Here, Plaintiff does not ask the Court to enjoin either state criminal proceeding. In addition, while Plaintiff seeks a declaratory judgment that Defendants violated his constitutional rights, he largely appears to be seeking monetary relief. *See* TAC ¶ 37. This also demonstrates that abstention is not appropriate here.

In sum, Defendants fail to establish any grounds to dismiss the TAC. Accordingly, and for good cause shown,

IT IS on this 7th day of March, 2022,

**ORDERED** that the Clerk of the Court is directed to file the Third Amended Complaint (D.E. 12) without prepayment of the filing fee; and it is further

**ORDERED** that the Clerk shall mail to Plaintiff a transmittal letter explaining the procedure for completing United States Marshal ("Marshal") 285 Forms ("USM-285 Forms") for service as to Defendants Christopher Shaughnessy and Ivelisse Rodriquez; and it is further

**ORDERED** that once the Marshal receives the USM-285 Form(s) from Plaintiff and the Marshal so alerts the Clerk, the Clerk shall issue summons in connection with each USM-285 Form that has been submitted by Plaintiff, and the Marshal shall serve summons, solely as to Defendants Christopher Shaughnessy and Ivelisse Rodriquez, and the Third Amended Complaint to the address specified on each USM-285 Form, with all costs of service advanced by the United States[13]; and it is further

**ORDERED** that the Moving Defendants have waived their right to contest service; and it is further

**ORDERED** that Defendants shall file and serve a responsive pleading within the time specified by Federal Rule of Civil Procedure 12; and it is further

**ORDERED** that the Moving Defendants' motion to dismiss, D.E. 35, is **DENIED**; and it is further

---

[13] Alternatively, the Marshal may notify Defendants that an action has been commenced and request that they waive personal service of a summons in accordance with Fed. R. Civ. P. 4(d).

**ORDERED** that the Clerk of the Court shall mail a copy of this Opinion and Order to Plaintiff by regular mail.

_____
John Michael Vazquez, U.S.D.J.