**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ABDUL DAVIS,

    *Plaintiff*,

v.

DENNIS BURKE, et al.,

    *Defendants*.

Civil Action No. 19-10620

**OPINION**

**John Michael Vazquez, U.S.D.J.**

*Pro se* Plaintiff Abdul Davis alleges that multiple law enforcement members violated his civil rights while executing an arrest warrant at his home. Presently before the Court is a motion for summary judgment filed by Defendants Captain Dennis Burke, Lt. Carlo Capparruva, Lt. Guerrant, Detective Manuel Cruz, Detective James Miller, Officer Kenneth Randazza, and Officer Ryan Hanrahan (the "County Defendants"). D.E. 80. Plaintiff filed a letter in opposition to the motion. The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the County Defendants' motion is **GRANTED**.

---

[1] The County Defendants' brief in support of the motion is filed at D.E. 80-3 ("Def. Br.") and their statement of undisputed material facts and accompanying exhibits is filed at D.E. 80-1 ("SUMF"). Plaintiff filed a statement of material facts and accompanying exhibits at D.E. 69 ("Resp. SUMF"), in response to the County Defendants' first motion for summary judgment. Because the County Defendants' current SUMF is largely the same as the statement of material facts that it filed with its earlier motion for summary judgment, the Court considers Plaintiff's response in deciding the instant motion.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court reviewed the facts set forth in the Third Amended Complaint when it considered a prior motion to dismiss and incorporates that discussion herein.[2] D.E. 49 at 2-4. On April 20, 2016, Plaintiff was indicted by a grand jury in New York County, New York. SUMF ¶ 1. A warrant was issued for Plaintiff's arrest. *Id.* ¶ 2. Plaintiff contests the validity of this warrant because it was "not signed by a judge or magistrate" but by "a court clerk."[3] Resp. SUMF ¶ 2. On April 22, 2016, Union County Sheriff's Officers and New York City Police Officers[4] went to Plaintiff's residence at 417 South Wood Avenue, Unit 2, Linden, New Jersey to serve Plaintiff with the arrest warrant. TAC ¶ 13; SUMF ¶¶ 3-4, 6. On that day, Plaintiff, Shelita Funderberk, Malik Rainey, and Yasmian Boyd Rainey were present at Plaintiff's apartment. SUMF ¶ 5. Funderberk is alleged to be Plaintiff's "lady-friend." TAC ¶ 14. "Upon approaching the front door the officers noticed the mailbox had both Davis and Funderberk written on it." SUMF ¶ 7. Funderberk's vehicle was also parked in the rear of the residence. *Id.* ¶ 8.

---

[2] The facts are drawn from Plaintiff's Third Amended Complaint, D.E. 51 ("TAC"); the SUMF; and the Resp. SUMF. The TAC was initially filed at D.E. 12, and what appears to be an identical copy was later filed at D.E. 51. The County Defendants agree that D.E. 51 is the operative pleading. Def. Br. at 1.

[3] Plaintiff's opposition states as follows: "I am sending you this brief letter, in regards to the Defendant asking for a summary judgment, without responding in regards to the warrant, which is the key factor of this suit." D.E. 82. In his initial Complaint, Plaintiff alleged that Defendants did not have a warrant for his arrest. D.E. 1. The Court dismissed this claim and stated that the arrest warrant appeared valid on its face. D.E. 5 at 5. Plaintiff did not replead any claims pertaining to the validity of the arrest warrant. Thus, as it stands, Plaintiff's reference to the warrant does not appear to address any pertinent issues in this matter.

[4] Plaintiff also asserts his claims against two New York City Police Department Defendants. Neither New York City Police Officer Defendant, however, joins in the County Defendants' motion for summary judgement.

"Plaintiff was handcuffed upon his answering of the door." *Id.* ¶ 9. Plaintiff counters that at this point, Defendants "crossed Plaintiff's home's threshold without authorization or without a warrant and arrested plaintiff." Resp. SUMF ¶ 9. Defendants then "removed Plaintiff from the apartment and kept him on the outdoor porch" while they "secured" Funderberk and Malik Rainey. SUMF ¶ 10.

The County Defendants next state that they "found Funderberk inside the home, at the top of the stairs." *Id.* ¶ 11. "Funderberk was arrested on the warrant." *Id.* ¶ 12. The County Defendants claim that "Plaintiff is unaware of what was said to Funderberk by Plaintiffs [*sic*] and could not see the interaction either." *Id.* ¶ 13. They note, however, that Funderberk signed a consent to search form. Defendants maintain that the form was read to Funderberk and that she had no questions or objections to the form. *Id.* ¶ 14. The County Defendants state that "[t]here is no probative evidence provided by Plaintiff that Defendants coerced Funderberk to sign the consent order." SUMF ¶ 15. The form, titled "Permission to Search," indicates that it was executed by Funderberk on April 22, 2016. D.E. 65-2 at 39.

Plaintiff disagrees with the County Defendants' narrative of the events leading up to Funderberk signing the Permission to Search form. Plaintiff claims that he "refused to consent to the search of his home." Resp. SUMF ¶ 12. The County Defendants then "brought Funderberk into the home dining room so that Plaintiff could not see their interaction with Funderberk." *Id.* Plaintiff further states that "Funderberk signed a form giving the [Defendants] consent to search the home *after* [Defendants] had already search[ed] the home." *Id.* ¶ 13 (emphasis in original). In addition, Plaintiff states that "Funderberk['s] trial testimony provided[] probative evidence that [D]efendants coerced her to sign the consent form." *Id.* ¶ 14. In support, Plaintiff points to excerpts of Funderberk's testimony from the underlying criminal trial. *See* D.E. 69 at 8-21.

3

The parties agree that the search resulted in the seizure of "various weapons and money which were found in violation of" New Jersey state law. SUMF ¶ 16. "There was also mail found inside the residence addressed to Funderberk at that address." *Id.* ¶ 17. Plaintiff was placed in the Union County Jail and later extradited to New York State, where he stood trial, was convicted and is currently serving a sentence. SUMF ¶¶ 18-20.

Plaintiff filed this action on April 22, 2019, D.E. 1, alleging multiple constitutional violations, D.E. 51. Specifically, Counts One and Two involve Plaintiff's allegation that Defendants coerced Funderberk to consent to search, and Count Three involves Funderberk's ability to consent. The Court construed the claims as arising under 42 U.S.C. § 1983 and denied a prior motion to dismiss the TAC. D.E. 49. The present motion followed.[5] Through their motion, the County Defendants argue that they are entitled to qualified immunity for all three of Plaintiff's claims. D.E. 80.

**I.    LEGAL STANDARD**

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.

---

[5] The County Defendant initially filed a motion for summary judgment in February 2021. D.E. 65. This Court terminated the first motion for summary judgment because the County Defendants failed to account for the Court's reasoning in the prior opinion denying the County Defendants' motion to dismiss. D.E. 73. The Court ordered that the County Defendants file a new motion for summary judgment and statement of undisputed material facts that considers for this Court's prior opinion. *Id.* The County Defendants subsequently filed the instant motion and SUMF.

*Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citation omitted) (the court must "view the facts in the light most favorable to the nonmoving party"). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

5

## II. ANALYSIS

At the outset, the County Defendants argue that they are entitled to qualified immunity because Plaintiff fails to satisfy either prong of the qualified immunity defense. *See, e.g.*, Def. Br. at 4. But "[t]he burden of establishing entitlement to qualified immunity" is on the party seeking its protection. *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982)). Thus, the County Defendants, not Plaintiff, must establish that both prongs of the inquiry demonstrate that they are entitled to qualified immunity. With this in mind, the Court addresses the merits of the County Defendants' qualified immunity argument.

Qualified immunity can protect a state actor from liability in a Section 1983 case. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "Qualified immunity shields government officials from personal liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *George v. Rehiel*, 738 F.3d 562, 571-72 (3d Cir. 2013) (quoting *Harlow*, 457 U.S. at 818). A court must engage in the following two-part inquiry to determine whether qualified immunity applies: (1) whether the facts show that the defendant's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Courts may start their qualified immunity inquiry with either prong and "[a]n answer in the negative to either prong entitles an officer to qualified immunity." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). Finally, a clearly established right is one that is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Thus, the second prong of the qualified immunity analysis "shields an officer from suit

when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

### A. Ability to Consent

The County Defendants contend that they are entitled to qualified immunity for Count Three because Plaintiff does not allege a constitutional violation with respect to Funderberk's ability to consent. Def. Br. at 4-6. In Count Three, Plaintiff alleges that he refused consent to search before Defendants obtained Funderberk's consent. TAC ¶ 21. Plaintiff further alleges that Funderberk did not live at Plaintiff's apartment, such that she could not consent to a search. *Id.* ¶ 33. Count Three involves Plaintiff's Fourth Amendment rights.

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011) (citation omitted). "Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion." *United States v. Coles*, 437 F.3d 361, 365–66 (3d Cir. 2006) (citation omitted). In addition, a third party may provide consent if she has common authority over the premises or effects that are searched. *Stabile*, 633 F.3d at 230. "Common authority rests . . . on [the] 'mutual use of the property by persons generally having joint access or control.'" *Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 170 (1974)). Whether common authority exists is an objective inquiry. *United States v. Al-Salabi*, No. 07-687, 2008 WL 2699429, at *10 (D.N.J. June 27, 2008) (explaining that a court must consider if "the facts available to the officer at the moment warrant a man of reasonable caution in belief that the consenting party had authority over the premises?" (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990))).

In the TAC, Plaintiff alleged that as Defendant Burke asked Funderberk for consent, Rainey yelled that Funderberk did not live in the apartment. TAC ¶ 35. But the evidence shows that Plaintiff was not present when they were asking Funderberk for consent, thus he was unaware of what occurred during the exchange. Davis Dep. 21:11-23. Moreover, during the April 22 incident, Plaintiff and Rainey were never on the front porch together, *id.* at 24:14-18, and Plaintiff could not hear conversations between Rainey and the police, *id.* at 33:19-22. Thus, no genuine evidence supports the allegation that Rainey indicated that Funderberk did not live in the apartment or that Plaintiff was even aware that the police asked Funderberk for consent to search. And Plaintiff does not dispute that Funderberk's name was on the mailbox and that both their vehicles were parked in the back of the apartment when the County Defendants arrived. Consequently, the evidence indicates that an objective inquiry demonstrates that Funderberk could consent to a search of the apartment. Plaintiff provides no evidence raising a genuine dispute of material fact to the contrary.

Plaintiff also maintains that there was a constitutional violation because he did not provide consent. One co-tenant's grant of consent to the police will not constitutionally authorize a search as to a present and objecting co-tenant. *Georgia v. Randolph*, 547 U.S. 103 (2006). Plaintiff alleges that he "refused to consent to the search of his home, and in response [D]efendants brought Funderberk into the home dining room so that Plaintiff could not see their interaction with Funderberk." Resp. SUMF ¶ 12. While Plaintiff cited to "Exhibit D," the Court sees no evidence that Plaintiff refused consent or otherwise objected to the search. Indeed, Plaintiff testified at his deposition that no one ever asked for his consent to search the property. D.E. 65-2 at 31 (Tr. 35:12-14). Moreover, there is also no evidence demonstrating that Plaintiff and Funderberk were together on the porch on April 22. Rather, the evidence demonstrates that Plaintiff was brought to

8

the porch after his arrest at the front door while other Defendants went upstairs to secure Funderberk and Rainey. SUMF ¶¶ 10-11. Consequently, the fact that the County Defendants solely relied on Funderberk's consent to search the apartment does not amount to a constitutional violation. Because no constitutional violation occurred, the Court need not address the second prong of the qualified immunity for Count Three of the FAC. Summary judgment, therefore, is granted as to Count Three.

### B. Coerced Consent

Counts One and Two also involve Funderberk's consent to search. Accordingly, these counts also implicate Plaintiff's Fourth Amendment rights. Again, "[w]arrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion." *Coles*, 437 F.3d at 365–66 (citation omitted). Whether a person's consent to search a home is valid and of constitutional force depends upon whether consent was freely given. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222-23 (1973). "Where there is coercion, there cannot be consent[,]" *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968), and such supposed consent would be "ineffective if extracted by the state under threat of force or under claim of government authority." *Good v. Dauphin Cnty. Soc. Servs. for Child. & Youth*, 891 F.2d 1087, 1093 (3d Cir. 1989). Courts "determine the voluntariness of a consent by examining the totality of the circumstances." *United States v. Price*, 558 F.3d 270, 278 (3d Cir. 2009) (citation omitted). "[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats of force, or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable." *Bustamonte*, 412 U.S. at 233 (citation omitted).

9

Plaintiff points to Funderberk's testimony from the underlying criminal trial to establish that the County Defendants "coerced [Funderberk] to sign the consent form." Resp. SUMF ¶ 14. The only relevant testimony on this point is that Funderberk stated that "I did not know what I was signing at the time. I was nervous and scared, I signed the paper, I didn't know what I was signing, but I was scared and nervous." D.E. 69 at 17 (Tr. 2230:20-23). In the excerpts Plaintiff provided, Funderberk does not attribute her nervous state to any actions by the Defendants. *See Dauphin Cnty.*, 891 F.2d at 1093 (noting that consent to search "is ineffective if *extracted by the state under threat of force or under claim of government authority*" (emphasis added)). Again, Plaintiff alleges that in presenting the consent form, Defendant Burke stated that "if she refused she would be arrested" and that other Defendants "physically came and stood around Funderberk aggressively, as if they were going to arrest Funderberk" and "[s]ome of the Defendants took out their hand-cuffs and night-sticks." TAC ¶ 19. But Plaintiff has not provided any evidence corroborating those allegations. Plaintiff admittedly did not hear what was said to Funderberk, and Plaintiff does not present any other evidence—from Funderberk or another witness—supporting his contention. In addition, the County Defendants had an arrest warrant for Funderberk, and according to the Investigation Report submitted by the County Defendants, Funderberk was handcuffed on the stairway before she was brought upstairs. D.E. 65-2 at 52.[6]

---

[6] The Court notes that Permission to Search form indicates that it was executed at 5:55 a.m. but the time entries in the "Crime Scene Evidence Log" note that items were seized before 5:55 a.m. D.E. 65-2 at 39. In addition, Funderberk testified that "[t]hey had already searched the apartment" before she signed the Permission to Search form. D.E. 69 at 17 (Tr. 2230:8-15). Thus, there could potentially be a constitutional violation based on the timing of the search and consent. But Plaintiff did not assert a claim based on the timing of the consent in his pleading and it is not clear if he is asserting this as a basis for a constitutional violation. Again, in his opposition brief, Plaintiff focuses only on the purported warrant issue. D.E. 82. Because it is not clear that Plaintiff even intends to assert such a claim, the Court will not consider the issue *sua sponte*. Finally, even if the Court were to consider such a claim, it is not clear if Plaintiff was damaged by such a constitutional violation. *See Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) ("Victims of unreasonable searches

Thus, it appears that Funderberk was already in handcuffs when Burke obtained her consent to search. This evidence also undermines Plaintiff's allegation that she was threatened with arrest if she did not consent to the search. Because Plaintiff does not provide any evidence demonstrating that Funderberk may have been coerced, there is no constitutional violation with respect to Funderberk's consent. Without a constitutional violation, the Court does not need to address the second prong of the qualified immunity inquiry. And because the County Defendants demonstrate that no constitutional violation occurred, summary judgment is granted for Counts One and Two.

### III.   CONCLUSION

For the reasons stated above, the County Defendants' motion for summary judgment (D.E. 80) is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: August 29, 2023

　　　　　　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.

---

or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." (quoting *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999))).